FILED
CLERK, U.S. DISTRICT COURT

FEB 24 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   SHERWOOD DON JENKINS,          )      ED CV 07-1097-CJC(E)
                                    )
12                Petitioner,       )
                                    )
13        v.                        )      ORDER ADOPTING FINDINGS,
                                    )
14   G. ADAMS, Warden,              )      CONCLUSIONS AND RECOMMENDATIONS
                                    )
15                Respondent.       )      OF UNITED STATES MAGISTRATE JUDGE
                                    )
16   _____)

17

18        Pursuant to 28 U.S.C. § 636, the Court has reviewed the

19   Petition, all of the records herein and the attached Report and

20   Recommendation of United States Magistrate Judge.  The Court approves

21   and adopts the Magistrate Judge's Report and Recommendation.

22

23        IT IS ORDERED that Judgment be entered denying and dismissing

24   the Petition with prejudice.

25   ///

26   ///

27   ///

28   ///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this

2  Order, the Magistrate Judge's Report and Recommendation and the

3  Judgment herein by United States mail on Petitioner and counsel for

4  Respondent.

5

6    LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8    DATED:  *February 19, 2009*                .

9

10                                 _____

11                                 CORMAC J. CARNEY
                                   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11  SHERWOOD DON JENKINS,              )  NO. ED CV 07-1097-CJC(E)
                                        )
12                  Petitioner,        )
                                        )
13      v.                             )  REPORT AND RECOMMENDATION OF
                                        )
14  G. ADAMS, Warden,                  )  UNITED STATES MAGISTRATE JUDGE
                                        )
15                  Respondent.        )
                                        )
16  _____)

17

18      This Report and Recommendation is submitted to the Honorable

19  Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C.

20  section 636 and General Order 05-07 of the United States District

21  Court for the Central District of California.

22

23                              PROCEEDINGS

24

25      Petitioner filed a "Petition for Writ of Habeas Corpus By a

26  Person in State Custody" on August 29, 2007.  Respondent filed an

27  Answer on November 6, 2007.  Petitioner filed a Reply on November 16,

28  2007.

1    On December 18, 2007, the Court issued an "Order re Exhaustion,"
2  deeming the Petition to be a mixed Petition because Petitioner had
3  failed to exhaust the following claims: (1) the claim that jury
4  instructions on consolidation allegedly may have misled or prejudiced
5  the jury; (2) the claim that the trial court assertedly committed
6  <u>Bruton</u> error[1]; and (3) the claim that Petitioner's trial counsel
7  allegedly rendered ineffective assistance by assertedly failing to
8  object to the alleged <u>Bruton</u> error.   The Order re Exhaustion advised
9  Petitioner of his options to: (1) abandon his unexhausted claims;
10 (2) request dismissal of the entire Petition without prejudice; or
11 (3) request a dismissal of the unexhausted claims without prejudice
12 and a stay of proceedings regarding his exhausted claims pursuant to
13 <u>Rhines v. Weber</u>, 544 U.S. 269, 273 (2005) ("<u>Rhines</u>").

14

15   On January 10, 2008, Petitioner filed a "Motion for Court to Stay
16 and Hold in Abeyance Petition for Writ of Habeas Corpus" ("Motion for
17 a Stay").[2]  By Order filed on March 24, 2008, the Court denied
18 Petitioner's Motion for a Stay, and advised Petitioner of his options

19 _____

20    [1]    In <u>Bruton v. United States</u>, 391 U.S. 123 (1968), the
   Supreme Court held that the admission of a co-defendant's
21 confession at a joint trial violated the defendant's right to
   confrontation.
22

23    [2]    The Magistrate Judge did not receive the Motion for a
   Stay, and the docket did not reflect the filing of the Motion for
24 a Stay, until February 14, 2008.  On February 6, 2008, the
   Magistrate Judge had issued a Report and Recommendation
25 recommending dismissal of the Petition without prejudice for
   failure to prosecute.  On February 19, 2008, the Magistrate Judge
26 issued a Minute Order withdrawing the Report and Recommendation
   of February 6, 2008.  On February 21, 2008, Petitioner,
27 apparently not yet having received the Minute Order of
   February 19, 2008, filed "Objections to Magistrate's Report and
28 Recommendation."

1   to: (a) request to amend the Petition to delete and abandon
2   Petitioner's unexhausted claims; or (b) request dismissal of the
3   entire Petition without prejudice.  On April 30, 2008, Petitioner
4   filed a "Request to Amend Petition for Writ of Habeas Corpus to Delete
5   Unexhausted Claims," which the Court construed as a request to amend
6   Petitioner's claims in this proceeding to delete and abandon all of
7   the claims identified as unexhausted in the Court's December 18, 2007
8   "Order re Exhaustion."  See Minute Order filed on May 8, 2008.
9
10      Respondent filed a Supplemental Answer addressing the merits of
11  the exhausted claims on July 8, 2008.  Petitioner failed to file a
12  Supplemental Reply within the time allotted, despite having requested
13  and received multiple extensions of time.
14
15                          **BACKGROUND**
16
17      A jury convicted Petitioner of second degree murder in violation
18  of California Penal Code section 187, and kidnapping in violation of
19  California Penal Code section 207(a), in connection with the shooting
20  death of Phillip Reeves (Reporter's Transcript ["R.T."] 1073-74;
21  Clerk's Transcript ["C.T."] 260, 263).  The jury found true the
22  allegation that a principal used a firearm in the commission of the
23  murder (R.T. 1073; C.T. 262).[3]  Petitioner received a sentence of
24

---

25      [3]    Although the jury also found true the allegation that
26  Petitioner killed a witness to prevent the witness' testimony in
    a criminal proceeding within the meaning of California Penal Code
27  section 190.2(a)(10) (C.T. 261), the trial court struck that
    finding as inconsistent with Petitioner's second degree murder
28  conviction (R.T. 1114; C.T. 283).

1 twenty-four years to life (R.T. 1112-15; C.T. 287-88).

2

3        The Court of Appeal affirmed the judgment (Respondent's Lodgment

4 6). The California Supreme Court denied Petitioner's petition for

5 review without comment (Respondent's Lodgment 8). Petitioner then

6 filed a habeas corpus petition in the Riverside County Superior Court,

7 which that court denied on September 14, 2005 (Respondent's Lodgments

8 9, 10). Petitioner filed two habeas corpus petitions in the

9 California Court of Appeal, which that court denied without comment on

10 December 28, 2005 and January 25, 2006, respectively (Respondent's

11 Lodgments 11, 12, 13, 14). Petitioner then filed a habeas corpus

12 petition in the California Supreme Court, which that court denied on

13 November 15, 2006, with a citation to In re Dixon, 41 Cal. 2d 756, 264

14 P.2d 513 (1953) (Respondent's Lodgments 15, 16).

15

16                        PETITIONER'S CONTENTIONS

17

18        After abandoning his unexhausted claims, Petitioner asserts the

19 following claims:[4]

20

21        1.   The California Supreme Court and lower state courts allegedly

22 failed to consider all of the facts and records assertedly supporting

23 Petitioner's claims (Pet., pp. 6-6A);

24 ///

25

26 ─────────────────

27        [4]    Although some of Petitioner's claims are contained in
the Reply only, the Court may consider claims raised for the
28 first time in a Reply. See, e.g., Boardman v. Estelle, 957 F.2d
1523, 1525 (9th Cir.), cert. denied, 506 U.S. 904 (1992).

                                    4

2.  The trial court's alleged failure to sever the charges against Petitioner from the assertedly unrelated charges against Petitioner's co-defendant, or, alternatively, to use two juries, assertedly violated the Constitution (Pet., pp. 6A-6C);

3.  The evidence allegedly was insufficient to support Petitioner's conviction (Reply, pp. 6, 15-16);

4.  Petitioner's trial counsel allegedly rendered ineffective assistance, by assertedly: (a) failing properly to object to joinder of the charges against Petitioner with the allegedly unrelated charges against Petitioner's co-defendant; and (b) failing to move for reasonable bail for Petitioner (Pet., pp. 6A, 6C-6D; Reply, pp. 7, 11-14); and

5.  The sentencing court's imposition of a consecutive sentence on the kidnapping charge allegedly violated the Constitution (Reply, p. 6).

## SUMMARY OF TRIAL EVIDENCE

The following factual summary is taken from the opinion of the California Court of Appeal in People v. Conner, 2004 WL 1047358 (Cal. Ct. App. 4th Dist. May 7, 2004) (Respondent's Lodgment 6). See Galvan v. Alaska Dep't of Corrections, 397 F.3d 1198, 1199 & n.1 (9th Cir. 2005) (taking factual summary from state appellate decision); see also 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"); Sanders v. Lamarque,

357 F.3d 943, 948 (9th Cir. 2004) (habeas court presuming California
Court of Appeal's findings of fact are correct "unless the petitioner
can prove otherwise by clear and convincing evidence"); <u>Taylor v.</u>
<u>Maddox</u>, 366 F.3d 992, 999 (9th Cir.), <u>cert. denied</u>, 543 U.S. 1038
(2004) (discussing AEDPA deference owed to state court findings of
fact).

        Magdalena Sikes (Sikes) and Dominique Payne (Payne) had
a child together.  In early June of 1999, [Petitioner's co-
defendant, Orlando Conner] and [Phillip Reeves] were
visiting Sikes at her home.  Luis Perez (Perez) and Payne
arrived and got into a fight with Conner and [Reeves].

        On June 17, 1999, Perez and Payne went to the Indian
Hills Market.  Conner and [Reeves] walked around a van in
the parking lot of the market as Payne and Perez were
sitting in Perez's car counting their money.  Conner came
back by himself, put his knees on the hood of the car,
pulled out a gun and fired through the windshield at Payne
and Perez.  Because Perez ducked when the shots were fired,
he only received injuries from the broken windshield glass.
However, Payne was struck and seriously injured.

        On June 22 and 23, 1999, sheriff's deputies interviewed
[Reeves] about the suspected attempted murders of Payne and
Perez.  They booked [Reeves] into the Juvenile Hall for the
suspected attempted murders but later released him.  On
September 19, 1999, Conner and Jenkins got a ride from

6

1    Christopher Thompson (Conner's sister's boyfriend) to

2    [Reeves'] home.  At [Reeves'] home, Conner asked [Reeves']

3    uncle where he could find [Reeves].  When [Reeves' uncle

4    said that [Reeves] went to the school to play basketball,

5    Conner directed Thompson to drive to the school.  When they

6    arrived, Conner and Jenkins jumped out of the car and looked

7    through the fence for [Reeves].  Unable to find [Reeves],

8    Conner directed Thompson to drive back towards [Reeves']

9    home.  When Conner spotted [Reeves], he (Conner) directed

10   Thompson to stop the car so Conner could get out.

11

12       When [Reeves] backed away from Conner, Conner asked

13   [Reeves], "[W]here the gun at? [sic]"  [Reeves] asked,

14   "[W]hat are you talking about[?]"  Conner replied, "Like

15   Phillip, did you snitch on me, because my friends are

16   telling me you snitched on me."  In a deep, angry voice,

17   Conner repeatedly commanded [Reeves] to get into the car.

18   Conner pulled a gun from his waistline, pointed it at

19   [Reeves], and directed him to get into the car.  [Reeves]

20   complied.

21

22       As Conner directed Thompson to drive past Conner's

23   sister's house, Conner continued to tell [Reeves], "[Y]ou

24   snitched on me."  Despite [Reeves'] denials, Conner ordered

25   [Reeves] out of the car at gunpoint, about 20 feet past

26   Conner's sister's house.  Conner told [Reeves] to get on his

27   knees, to start digging and find the gun.  As [Reeves] was

28   digging, Conner shouted that the gun would not be there

7

because [Reeves] gave it to the police.

When Conner and [Reeves] got back into the car, Jenkins said, "[H]e's the only witness. You got to kill him." Conner replied that he was "gonna take care of Phillip." When [Reeves] continued to protest that he never "snitched" on Conner, Conner replied that the gun would be there if [Reeves] had not "snitched" because Conner and [Reeves] had buried the gun together.

Conner directed Thompson to Quest's (Tremel Taylor) house, about 15 minutes away. When Thompson asked what was going on, Conner replied, "You ain't got nothing to do with this." After Jenkins and Tremel Taylor (Taylor) got into a red car, Conner ordered Thompson to follow the red car. The cars drove to the Riverside land dump. As Conner continued to accuse [Reeves] of "snitching" on him, [Reeves] grabbed at Thompson, begging, "[D]on't let them kill me." When Thompson and Conner got out of Thompson's car, Conner told Thompson, "I'm gonna kill him and I'm gonna kill him right here in your car." Thompson told Conner not to "do this." [Reeves] jumped out of the car and ran.

Conner gave chase, firing four to five shots at [Reeves]. When [Reeves] jumped a barbed wire fence and ran into a field, Conner followed. Laughing, either Taylor or Jenkins said, "[Y]ou better catch him, he [sic] getting away from you." Taylor ordered Thompson to follow them.

8

Conner fired another four to five shots at [Reeves].
[Reeves] fell to the ground after jumping a second barbed
wire fence.  Thompson, Jenkins and Taylor followed Conner.
Conner ran to [Reeves'] body, got on top of him and began
choking him while saying, "I'm gonna make sure you don't
testify against me in court."  Conner strangled [Reeves]
over a 10 minute span, during which time Jenkins and Taylor
retrieved the cars and drove them back to Conner's new
location.

When Conner yelled for Thompson to come see if [Reeves]
was still breathing, Thompson replied, "[H]e ain't
breathin'."  After Conner yelled at Thompson a second time,
Thompson checked [Reeves'] heart and confirmed that [Reeves]
was not breathing.

When Jenkins and Taylor asked if [Reeves] was dead,
Conner replied, "If he ain't dead, he's gonna be dead."
Conner then told Thompson to go find a rock.  Thompson
complied with the request because he did not know if Conner
had any more bullets in the gun.  Conner grabbed the rock
from Thompson and used it to smash [Reeves'] head four or
five times.  Conner then said that he had taken care of
"that situation."

[Reeves] died from multiple gunshot wounds and blunt-
force head and neck traumas.  The fatal gunshot perforated
the stomach, diaphragm, lower lung, and apex of the heart.

9

1   The blunt-force traumas bruised the brain stem, forced
2   hemorrhages through the brain and broke the jaw.  Choking
3   abrasions and hemorrhages, along with a fractured thyroid
4   cartilage, evidenced [Reeves'] strangulation.

6       After Thompson, Conner, Taylor and Jenkins returned to
7   Thompson's car, Conner directed Thompson to the house of
8   Rosalyn Reed (Conner's girlfriend) in Moreno Valley.  Taylor
9   and Jenkins followed them in Taylor's car.  At the house,
10  Conner began taking off his clothes, directing Thompson to
11  do the same so that they could burn the evidence.  Conner
12  threatened to kill Thompson, just like he killed [Reeves],
13  if Thompson said anything to the police or to anyone else.
14  Jenkins then grabbed a bottle of lighter fluid, sprayed it
15  on the clothes and Conner lit them on fire.  The police
16  drove up as the fire burned.  Both Conner and Jenkins fled
17  the scene.

19      In September 1999, Conner had been living with Reed on
20  and off.  When Reed discovered that the police were looking
21  for Conner in regards to a murder, she asked him if what the
22  police were saying was true.  He did not say anything.  Reed
23  recalled a gathering during which Conner told a few people
24  about the altercation between him and Payne at Sike's house.

26      When the police arrived at Reed's home on November 8,
27  1999, she told Conner that the police were there.  In
28  response, he went to a crawl space in the closet, which runs

10

1    under the house.  Reed had removed the boxes covering the

2    space so that Conner could get underneath the house.  She

3    has a felony conviction for harboring Conner.

4

5    (People v. Conner, 2004 WL 1047358 (Cal. Ct. App. 4th Dist. May 7,

6    2004); Respondent's Lodgment 6).

7

8                          STANDARD OF REVIEW

9

10        A federal court may not grant an application for writ of habeas

11   corpus on behalf of a person in state custody with respect to any

12   claim that was adjudicated on the merits in state court proceedings

13   unless the adjudication of the claim: (1) "resulted in a decision that

14   was contrary to, or involved an unreasonable application of, clearly

15   established Federal law, as determined by the Supreme Court of the

16   United States"; or (2) "resulted in a decision that was based on an

17   unreasonable determination of the facts in light of the evidence

18   presented in the State court proceeding."  28 U.S.C. § 2254(d);

19   Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537

20   U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

21

22        "Clearly established Federal law" refers to the governing legal

23   principle or principles set forth by the Supreme Court at the time the

24   state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

25   (2003).  A state court's decision is "contrary to" clearly established

26   Federal law if: (1) it applies a rule that contradicts governing

27   Supreme Court law; or (2) it "confronts a set of facts . . .

28   materially indistinguishable" from a decision of the Supreme Court but

                                   11

1  reaches a different result.  See Early v. Packer, 537 U.S. at 8

2  (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

3

4      Under the "unreasonable application prong" of section 2254(d)(1),

5  a federal court may grant habeas relief "based on the application of a

6  governing legal principle to a set of facts different from those of

7  the case in which the principle was announced."  Lockyer v. Andrade,

8  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

9  U.S. at 24-26 (state court decision "involves an unreasonable

10 application" of clearly established federal law if it identifies the

11 correct governing Supreme Court law but unreasonably applies the law

12 to the facts).  A state court's decision "involves an unreasonable

13 application of [Supreme Court] precedent if the state court either

14 unreasonably extends a legal principle from [Supreme Court] precedent

15 to a new context where it should not apply, or unreasonably refuses to

16 extend that principle to a new context where it should apply."

17 Williams v. Taylor, 529 U.S. at 407 (citation omitted).

18

19     "In order for a federal court to find a state court's application

20 of [Supreme Court] precedent 'unreasonable,' the state court's

21 decision must have been more than incorrect or erroneous."  Wiggins v.

22 Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

23 court's application must have been 'objectively unreasonable.'"  Id.

24 at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

25 1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).

26

27     In applying these standards, this Court looks to the last

28 reasoned state court decision.  See Franklin v. Johnson, 290 F.3d

                                    12

1  1223, 1233 n.3 (9th Cir. 2002); see also Davis v. Grigas, 443 F.3d
2  1155, 1158 (9th Cir. 2006) (citation and quotations omitted).  "Where
3  there has been one reasoned state judgment rejecting a federal claim,
4  later unexplained orders upholding that judgment or rejecting the same
5  claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797,
6  803 (1991); see also Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2
7  (9th Cir. 2000), cert. denied, 534 U.S. 944 (2001) (where California
8  Supreme Court denies review without comment, federal courts "look
9  through" unexplained California Supreme Court decisions to last
10  reasoned decision as basis for state court's judgment).  If the state
11  courts reject a defendant's claim in an unreasoned disposition, the
12  reviewing court must conduct an independent review to determine
13  whether the decision is contrary to, or involved an unreasonable
14  application of, "clearly established" Supreme Court precedent.  Pirtle
15  v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing Delgado v.
16  Lewis, 223 F. 3d 976, 982 (9th Cir. 2000)); see also Himes v.
17  Thompson, 336 F.3d 848, 853-54 (9th Cir. 2003).  "Independent review
18  of the record is not de novo review of the constitutional issue, but
19  rather, the only method by which we can determine whether a silent
20  state court decision is objectively unreasonable."  Himes, 336 F.3d at
21  853.

23                          DISCUSSION

25      For the reasons discussed below, the Petition should be denied

1    and dismissed with prejudice.[5]

2

3    I.    **The Trial Court's Failure to Sever Petitioner's Trial from**

4          **Conner's Trial Does Not Merit Habeas Relief.**

5

6          Petitioner alleges that the trial court's refusal to sever

7    Petitioner's trial from co-defendant Conner's trial or, alternatively,

8    to provide Petitioner with a separate jury, deprived Petitioner of due

9    process and a fair trial (Pet., p. 6A; Reply, p. 6; Respondent's

10   Lodgment 15, pp. 3-12).

11

12         A.    **The Trial Court Proceedings**

13

14         By motion dated December 21, 1999, the prosecution asked the

15   trial court to consolidate the cases against Petitioner and Conner

16   concerning the Reeves murder (C.T. 41-46).  Conner had not yet been

17   held to answer any charges from the Indian Hills Market shooting.

18   See C.T. 62-B - 62-Zz (Conner's preliminary hearing transcript from

19

20         ---

             [5]    The Court assumes, arguendo, Petitioner has not
21   procedurally defaulted any of his claims.  See Lambrix v.
     Singletary, 520 U.S. 518, 523-25 (1997); Franklin v. Johnson, 290
22   F.3d 1223, 1229, 1232-33 (9th Cir. 2002); see also Barrett v.
     Acevedo, 169 F.3d 1155, 1162 (8th Cir.), cert. denied, 528 U.S.
23   846 (1999) ("judicial economy sometimes dictates reaching the
     merits if the merits are easily resolvable against a petitioner
24   while the procedural bar issues are complicated"); Phillips v.
     Kenan, 231 Fed. Appx. 686 (9th Cir. May 10, 2007) (unpublished
25   decision) (citing Lambrix in affirming district court's denial of
     relief on the merits for claim petitioner "probably procedurally
26   defaulted" but for which the merits were easily resolved against
     the petitioner).  The Court may cite unpublished Ninth Circuit
27   opinions issued on or after January 1, 2007.  See U.S. Ct. App.
28   9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

the Indian Hills Market shooting dated March 7, 2001).  The
prosecution argued that both defendants were charged with the same
crimes from the same incidents, and therefore consolidation would be
appropriate (R.T. 2).  While Petitioner's counsel did not file written
opposition to the motion, Petitioner's counsel opposed the motion when
the motion came on for hearing (R.T. 1).[6]  The trial court granted the
motion, but did so without prejudice to the later renewal of
Petitioner's objection to consolidation (R.T. 2).

After an Information alleged that Conner attempted to murder
Dominique Payne and Luis Perez by the Indian Hills Market shooting
(C.T. 62-Aa1 - 62-Cc1), the prosecution filed a second motion.  This
second motion, dated March 12, 2001, asked the trial court to
consolidate trial on the charges against Conner from the Indian Hills
Market shooting with trial on the charges against Conner and
Petitioner from the Reeves shooting (Supplemental C.T., pp. 3-7).  The
prosecution argued, inter alia, that: (1) the charges were of the same
class of crimes because both "involved assaultive conduct"; (2) the

---

[6]     Petitioner's counsel argued:

> Your Honor, we would oppose the motion to consolidate.
> I haven't submitted any points and authorities, but
> general principles of fairness and justice we oppose it
> primarily because it's - Mr. Conner's, I believe, is
> going to be a capital case.  Mr. Jenkins' is a
> noncapital case.  On that basis, we would oppose
> consolidation.  I would ask that the Court that
> whatever decision the Court makes to make it without
> prejudice because there's still probably discovery
> coming down the road and things that - it may become a
> more viable alternative down the road.

(R.T. 1).

1  crimes were tied together in their commission because Conner killed
2  Reeves for snitching to the police concerning Conner's involvement in
3  the Indian Hills Market shooting; and (3) Petitioner was connected to
4  the crimes because Petitioner allegedly encouraged Conner to kill
5  Reeves for snitching.  See Supplemental C.T., pp. 3-4 (suggesting that
6  the motive for the Reeves murder was the Indian Hills Market
7  shooting).  Once again, Petitioner's counsel did not file written
8  opposition to the motion, but did object at the hearing on the
9  prosecution's motion, arguing that consolidation unfairly would
10 prejudice Petitioner (R.T. 13-14).[7]  The trial court took the motion
11 under submission (R.T. 16).

12

13      When the trial court reconvened on June 15, 2001, Conner's
14 counsel reported that he would not be filing any written opposition to
15 the prosecution's consolidation motion because counsel did not believe
16 Conner had any "serious legal ground" upon which to oppose
17 consolidation (R.T. 26).  Petitioner's counsel reported that he was in
18 a "similar position" to Conner's counsel, but did object to
19 consolidation based on "Sixth, Eighth and Fourteenth Amendment

20 _____

21      [7]    Petitioner's counsel argued:

22      Your Honor, on behalf of Mr. Jenkins, it was my
        intention to object for the record on the grounds of
23      prejudice.  And this past week I received
        correspondence from Mr. Jenkins which was in the form
24      of a handwritten motion stating the grounds he believes
        I should be raising in opposition to the motion to
25      consolidate.  ¶ And also today I received a typewritten
        copy of that from his family.  I indicated to him I
26      would not be filing his motion, but would be making an
        oral objection for the record.
27

28 (R.T. 14).

                                    16

grounds" (R.T. 26).   The trial court then consolidated the cases and charges without further discussion (R.T. 27).

When the case reconvened for voir dire before a different judge on September 5, 2002, Conner's counsel asked the trial court to sever the Indian Hills Market attempted murder charges from the Reeves murder charges (R.T. 33, 40).   Conner's counsel argued that trying the two cases together would be unduly prejudicial and would pair a weaker case (the attempted murders) with a stronger case (the murder) (R.T. 40-41).   Petitioner's counsel joined in the motion, noting that Petitioner was not charged in the Indian Hills Market shooting (R.T. 41).   The prosecution opposed the severance request, noting that there was evidence that Petitioner "was fully aware of the prior attempt murder, and that [Petitioner] participated in order to silence a prior witness" (R.T. 41).   The trial court denied the motion, finding the crimes were the "same class of crimes," connected in the commission, with certain interconnected facts (R.T. 42).

**B.   Petitioner's Post-Conviction Petitions**

Petitioner raised his severance claim in his state habeas petitions filed with the California Court of Appeal and California

17

1 Supreme Court (Respondent's Lodgments 11, 13, 15).[8]  Petitioner
2 asserted that the trial court had erred in consolidating the trials
3 and in denying requests to sever the trials, because: (1) there
4 assertedly was no connection between Petitioner and the charges for
5 the Indian Hills Market shooting (Respondent's Lodgment 15, p. 3);
6 (2) the evidence concerning the earlier shooting assertedly was
7 admissible only against Conner (Respondent's Lodgment 15, p. 4); and
8 (3) the joinder of Petitioner's case with Conner's case allegedly
9 prejudiced Petitioner and confused the jury, as evidenced by the
10 jury's special finding that Petitioner killed Reeves to prevent
11 Reeves' testimony in a criminal proceeding (Respondent's Lodgment 15,
12 pp. 7-8, 14).[9]  The state courts denied the petitions without comment
13 (Respondent's Lodgments 12, 14, 16), so the Court must conduct an
14 independent review to determine whether the decision was contrary to,
15 or involved an unreasonable application of, "clearly established"
16 Supreme Court precedent.  See Delgado v. Lewis, 223 F.3d at 982.
17
18

19          [8]     Petitioner may have raised this claim first in a habeas
20 petition filed in the Riverside County Superior Court.  See
   Respondent's Lodgment 9 ("Title pages from Petitioner's state
21 habeas petition").  The Superior Court denied the petition,
   noting that "Petitioner had failed to allege sufficient facts to
22 establish a prima facie case for petitioner's release.  (The
   allegations are vague and conclusory.)"  See Respondent's
23 Lodgment 10.

24          [9]     Petitioner also asserted that the prosecution
25 erroneously based the consolidation motion on California Penal
   Code section 954 instead of Penal Code section 1098 (Respondent's
26 Lodgment 15, p. 4).  To the extent Petitioner may be asserting
   this claim in these proceedings, Petitioner is not entitled to
27 relief.  Mere errors in the application of state law are not
   cognizable on habeas corpus.  Estelle v. McGuire, 502 U.S. 62,
28 67-68 (1991).

18

1    **C.    Discussion**

2

3         Federal habeas corpus relief may be granted "only on the ground

4    that [Petitioner] is in custody in violation of the Constitution or

5    laws or treaties of the United States."   28 U.S.C. § 2254(a).   The

6    improper joinder of defendants does not violate the Constitution

7    unless "it results in prejudice so great as to deny a defendant his

8    Fifth Amendment right to a fair trial."   United States v. Lane, 474

9    U.S. 438, 446 n.8 (1986).   When reviewing a trial court's denial of a

10   motion to sever, "[t]he question presented in a state prisoner's

11   petition for writ of habeas corpus is whether the state proceedings

12   satisfied due process.   To prevail, [petitioner] bears the burden of

13   demonstrating that the state court's denial of his severance motion

14   rendered his trial fundamentally unfair."   Grisby v. Blodgett, 130

15   F.3d 365, 370 (9th Cir. 1997) (internal citations and quotation marks

16   omitted); see also Davis v. Woodford, 384 F.3d 628, 638-39 (9th Cir.

17   2004), cert. denied, 545 U.S. 1165 (2005) (discussing same).[10]

18   Fundamental unfairness is shown if the "impermissible joinder had a

19   substantial and injurious effect or influence in determining the

20   jury's verdict."   Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir.

21   2000), cert. denied, 534 U.S. 943 (2001).   Factors that may be

22   considered include the joinder of other crimes where the evidence

23   otherwise would be inadmissible, and the joinder of a weak evidentiary

24   case with a strong one.   Id.

25

26   _____

27         [10]     Contrary to Petitioner's assertions, a federal habeas
     court should neither "depend on the state law governing severance
28   in state trials" nor "consider procedural rights to severance
     afforded in federal trials."   Grisby, 130 F.3d at 370.

1    Here, the joint trial did not have a substantial and injurious
2    effect on the jury's verdict.  As the prosecution pointed out,
3    evidence discovered over the course of the investigation revealed that
4    the possible motive for the Reeves shooting was Reeves' involvement
5    with Conner in the Indian Hills Market shooting, and Reeves'
6    subsequent contact with the police.  Rosalyn Reed told police
7    investigators that Petitioner was present when Conner spoke of the
8    first shooting, prior to when Petitioner went with Conner to find
9    Reeves on the day Reeves was killed (R.T. 514-19; see also R.T. 678-79
10   (Investigator Hussey testifying re same)).  Chris Thompson testified
11   that, when Reeves did not find the gun hidden from the first shooting,
12   Petitioner told Conner "He's the only witness.  You got to kill him"
13   (R.T. 108).  Thompson also testified that Conner killed Reeves while
14   saying "I'm going to make sure you don't testify against me in court"
15   (R.T. 140).  This evidence linking Petitioner to the two shootings
16   would have been fully admissible had Petitioner been tried separately.
17   This cross-admissibility dispels any potential prejudicial impact of
18   joining the trials.  See Sandoval, 241 F.3d at 772; see also Comer v.
19   Schriro, 480 F.3d 960, 985 (9th Cir.), cert. denied, 127 S. Ct. 2455
20   (2007) (cross-admissibility of evidence significantly reduces
21   potential of prejudice).

22

23   The only identified evidence at the joint trial that would not
24   have been admissible in a separate trial concerned a hearsay statement
25   that Conner made to Rosalyn Reed implicating both himself and other
26   people.  See Reply, p. 10 (discussing same).  Prior to Reed's
27   testimony, the trial court granted a motion in limine to exclude any
28   out-of-court statements made by Conner except the statement that

1 Conner "can't believe he killed his homie" (R.T. 372-74).  The trial
2 court explicitly excluded any other statements that may implicate
3 others, including Petitioner (R.T. 374).  The prosecution later asked
4 Reed:

6     Q.    You remember telling the police that [Conner] had made
7            several statements saying, he can't believe he killed
8            his homie, referring to Phillip?
9     A.    I don't remember telling the police that.
10     Q.    Did you tell the police, "she asked him several times
11            if he did it, and he said, no, it wasn't just me."
12     A.    I don't remember telling the police that either.

14 (R.T. 528).  The trial court then took a break in the questioning to
15 warn the prosecution outside the presence of the jury against asking
16 about Conner's "It wasn't just me" statement, per the court's earlier
17 ruling (R.T. 528-30).  When trial resumed, the prosecution made no
18 further inquiry concerning Conner's out-of-court statements that may
19 have implicated others (R.T. 531-36).

21     Contrary to Petitioner's assertion, the prosecution's improper
22 question did not amount to the introduction of co-defendant Conner's
23 hearsay statement.  See Reply, p. 10.  At the close of evidence, the
24 trial court instructed the jury that statements made by the attorneys
25 during trial are not evidence (R.T. 1011; C.T. 129).  The trial court
26 also instructed the jury: "Do not assume to be true any insinuation
27 suggested by a question asked a witness.  A question is not evidence
28 and may be considered only as it helps you to understand the answer"

1  (R.T. 1011; C.T. 129).  The trial court thereby neutralized any risk

2  of prejudice from the joint trial by giving these instructions.  See

3  Zafiro v. United States, 506 U.S. 534, 539-41 (1993) (risk of

4  prejudice from joinder of multiple defendants for trial is of the type

5  that can be cured with proper instructions).  The jury is presumed to

6  have followed the court's instructions.  See Weeks v. Angelone, 528

7  U.S. 225, 226 (2000).[11]

8

9      To the extent Petitioner asserts that the joinder of his case

10  with Conner's case prejudiced Petitioner by confusing the jury, the

11  assertion lacks merit.  The record reflects that the jury properly

12  distinguished between the two co-defendants.  During deliberations,

13  the jury sent out a question asking: "Is it possible to find one

14  defendant guilty of first-degree murder, and the other defendant

15  guilty of second-degree murder?" (R.T. 1067; C.T. 259-B).  The trial

16  court referred the jury to all jury instructions, including CALJIC

17

18

19

20

21

22

_____

23  [11]      Even if Conner's out-of-court statements had been
    introduced in evidence, and even if the limiting instructions had
24  been insufficient, no constitutional error would have occurred.
    The Sixth Amendment right of confrontation prevents the use at a
25  joint trial of a non-testifying defendant's admission if the
    admission incriminates another defendant on its face.  See Bruton
26  v. United States, 391 U.S. 123 (1968); Richardson v. Marsh, 481
    U.S. 200, 208 (1987); see also Mason v. Yarborough, 447 F.3d 693,
27  695 (9th Cir.), cert. denied, 549 U.S. 902 (2006) (discussing
    same).  Conner's alleged statement to Reed "It wasn't just me,"
28  does not incriminate Petitioner on the face of the statement.

22

17.00 (C.T. 259-B).[12]  The jury then returned different verdicts for
Petitioner and Conner, finding Petitioner guilty of second degree
murder for the Reeves shooting, and Conner guilty of first degree
murder for the Reeves shooting (R.T. 1071-78; C.T. 260-263-I).  The
jury did find true the special allegation that Petitioner killed
Reeves to prevent Reeves' testimony in a criminal proceeding (R.T.
1073; C.T. 261).  The trial court struck this finding, however, as not
appropriate for a second degree murder conviction.  See R.T. 1114
(noting that the jury wrote in "second" as the degree of murder on the
verdict form); C.T. 283; see also R.T. 1033, C.T. 190 (instructing the
jury that the special circumstance applied only to a defendant found
guilty of first degree murder).  Therefore, this single example of
jury "confusion" did not prejudice Petitioner.  See Sandoval v.
Calderon, 241 F.3d at 772.[13]

     Petitioner also claims that the trial court's denial of a
separate jury denied him a fair trial (Petition, p. 6A; Respondent's
Lodgment 15, p. 12).  There is nothing in the record suggesting that
Petitioner ever requested a separate jury.  See R.T. 33-36 (counsel

_____

     [12]   CALJIC 17.00 as given provides:

     You must decide separately whether each of the
     defendants is guilty or not guilty.  If you cannot
     agree upon a verdict as to [both] the defendants, but
     do agree upon a verdict as to any one of them, you must
     render a verdict as to the one as to whom you agree.

(R.T. 1045; C.T. 207).

     [13]   The trial court also modified the verdict forms to
differentiate between the defendants and to make it clear that
the attempted murder counts were separate crimes not involving
Petitioner (R.T. 813).

23

1  and trial court discussing voir dire procedure). In any event, there
2  is no reason to believe that a separate jury at a joint trial would
3  have been any "fairer" in a generic sense, much less a constitutional
4  sense. Petitioner's vague and conclusory allegations to the contrary
5  do not merit relief. James v. Borg, 24 F.3d 20, 26 (9th Cir.), cert.
6  denied, 513 U.S. 935 (1994); Jones v. Gomez, 66 F.3d 199, 204 (9th
7  Cir. 1995), cert. denied, 517 U.S. 1143 (1996).

8

9      For all the foregoing reasons, Petitioner's severance claim does
10  not merit habeas relief. No prejudice resulted from the trial court's
11  failure to sever Petitioner's trial from Conner's trial. The state
12  courts' rejection of Petitioner's severance claim was not objectively
13  unreasonable.

14

15  II.  **The Evidence Adduced at Trial Was Sufficient to Support**
16       **Petitioner's Conviction.**

17

18      Petitioner contends that the evidence was insufficient to
19  corroborate accomplice Thompson's testimony under California law
20  (Reply, p. 6; Respondent's Lodgment 7, p. 8).

21

22      A.  **Background**

23

24      Shortly before the close of evidence in Petitioner's trial, the
25  trial court found that witness Thompson was an "accomplice as a matter
26  of law" under California Penal Code section 1111 (R.T. 853). Section
27  1111 provides:
28  ///

24

1    A conviction cannot be had upon the testimony of an
2    accomplice unless it be corroborated by such other evidence
3    as shall tend to connect the defendant with the commission
4    of the offense; and the corroboration is not sufficient if
5    it merely shows the commission of the offense or the
6    circumstances thereof.

7

8    On direct appeal, the California Court of Appeal rejected in a
9    reasoned opinion Petitioner's claim that the evidence was insufficient
10    to corroborate Thompson's testimony (Respondent's Lodgment 6, p. 21).
11    The Court of Appeal summarized the corroborating evidence:

12

13    First, the evidence showed that Conner was friends with
14    Jenkins and Taylor, Taylor lived near Reed, and Jenkins and
15    Connor frequented Reed's home.

16

17    Second, regarding the attempted murders of Payne and
18    Perez, Jenkins and Taylor knew about them because Conner
19    talked about them in their presence.  When Connor went
20    searching for [Reeves] to question him as to whether or not
21    he snitched about the attempted murders, Jenkins was with
22    him.  Jenkins did most of the questioning, which was loud
23    and aggressive.  When Conner located [Reeves] on the street,
24    Jenkins was there as well.  Approximately three hours after
25    confronting [Reeves] on the street, Taylor, Conner, and
26    Jenkins went to Reed's home where they burned clothes.  When
27    the police arrived at Reed's home, Taylor and Thompson were
28    the only ones to comply with the officers' demands.  Conner

25

and Jenkins fled the scene.  Water in Thompson's car
suggested an attempt to wash the car.

Third, when the officers found [Reeves'] body, the
wounds confirmed Thompson's description of how [Reeves] was
murdered. [Reeves] suffered scratch marks, his DNA was on a
barbed wire fence, he had been shot, he had been choked, and
a rock had been used to pummel his head.

Fourth, the police found shell casings at the murder
scene.  The casings and a bullet recovered from [Reeves']
body came from the same handgun.  They also discovered a
hole where Conner had forced [Reeves] to dig for the gun
used in the attempted murders.  Inside the hole, they
recovered a cloth-wrapped handgun.  This discovery
corroborated Thompson's description of the unsuccessful dig
which immediately preceded [Reeves'] transportation to the
murder scene.

And finally, when Jenkins was caught by the police, he
lied that he ran from the scene of the fire because of
nonexistent outstanding warrants.

(Respondent's Lodgment 6, pp. 21-22).

**B.   Discussion**

As noted above, federal habeas corpus relief may be granted "only

on the ground that [Petitioner] is in custody in violation of the
Constitution or laws or treaties of the United States." 28 U.S.C. §
2254(a). "As a state statutory rule, and to the extent that
uncorroborated testimony is not 'incredible or insubstantial on its
face,' [Section 1111's] rule is not required by the Constitution or
federal law." Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir. 2000)
(quoting United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir.
1993 ("The uncorroborated testimony of an accomplice is sufficient to
sustain a conviction unless it is incredible or insubstantial on its
face.")); see also Quinn v. Kirkland, 2008 WL 2909873 (C.D. Cal.
July 25, 2008) (discussing same); Larrimore v. Scribner, 2008 WL
2397580 (C.D. Cal. June 12, 2008) (same). Here, Thompson's testimony
was neither incredible nor insubstantial on its face. Thompson
provided a detailed account of the shooting supported by forensic
evidence and other witnesses' testimony. Compare United States v.
Necoechea, 986 F.2d at 1282 (finding accomplice's testimony not
incredible or insubstantial in light of defendant's presence at
location of planned drug transaction, in a room where other evidence
(i.e., cash) associated with the transaction was found, and where
there was testimony that a "moneyman" would be present at the drug
deal).

Because Thompson's testimony was neither incredible nor
insubstantial on its face, habeas relief "will lie for [Petitioner]
only if the alleged violation of section 1111 denied [Petitioner] his
due process right to fundamental fairness. A State violates a
criminal defendant's due process right to fundamental fairness if it
arbitrarily deprives the defendant of a state law entitlement." Laboa

27

1 | v. Calderon, 224 F.3d at 979 (internal citations omitted).  No such

2 | arbitrary deprivation occurred here.

3 |

4 | California Penal Code section 1111 requires only "slight"

5 | corroborative evidence.  People v. Fauber, 2 Cal. 4th 792, 834-35,

6 | 9 Cal. Rptr. 2d 24, 831 P.2d 249 (Cal. 1992), cert. denied, 507 U.S.

7 | 1007 (1993) (under section 1111, evidence "need not corroborate every

8 | fact to which the accomplice testified or establish the corpus

9 | delicti, but is sufficient if it tends to connect the defendant with

10 | the crime in such a way as to satisfy the jury that the accomplice is

11 | telling the truth").  For the reasons set forth by the Court of

12 | Appeal, trial evidence sufficiently corroborated Thompson's testimony.

13 | Thompson's description of the events on the night of the shooting

14 | conform with the physical evidence and with eyewitness accounts

15 | placing Petitioner with Conner and Reeves prior to the shooting and

16 | with Conner after the shooting.  Because the trial court did not

17 | arbitrarily deny Petitioner any state-created entitlement, Petitioner

18 | is not entitled to habeas relief.  Laboa, 224 F.3d at 980.[14]

19 | _____

20 | [14]   The Court notes that the trial court instructed the
jury with jury instructions identifying Thompson as an accomplice

21 | as a matter of law and explaining section 1111.  See C.T. 170-71,
173-74 (CALJIC 3.10, 3.16, 3.18, 3.11, 3.12 as given).

22 | Specifically, the court instructed with CALJIC 3.11 which
provides:

23 |

24 | You cannot find a defendant guilty based upon the
testimony of an accomplice unless that testimony is

25 | corroborated by other evidence which tends to connect
[that] defendant with the commission of the offense.

26 |

27 | [Testimony of an accomplice includes any out-of-court
statement purportedly made by an accomplice received

28 | for the purpose of proving that what the accomplice
(continued...)

28

Aside from the corroboration issue, Petitioner does not deny that the evidence was sufficient to support his conviction for kidnapping and second degree murder. In any event, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of both crimes beyond a reasonable doubt. See Wright v. West, 505 U.S. 277, 284, 296 (1992) (plurality opinion); Jackson v. Virginia, 443 U.S. 307, 317, 319 (1979)).

To find Petitioner guilty of kidnapping, the jury had to find that Petitioner, either directly or as an aider and abettor: (1) unlawfully moved a person by physical force or fear; (2) without the person's consent; and (3) for a substantial distance. See People v. Jones, 108 Cal. App. 4th 455, 462, 133 Cal. Rptr. 2d 358 (2003) (discussing elements); Cal. Penal Code § 207. To find Petitioner guilty of second degree murder, the jury had to find either that: (1) Petitioner aided and abetted the killing of a human being with intent to kill; or (2) Petitioner aided and abetted a kidnapping, the natural consequences of which was the murder. See Cal. Penal Code §§ 188, 189; see also People v. Nieto Benitez, 4 Cal. 4th 91, 102-04, 13 Cal. Rptr. 2d 864, 869-70, 840 P.2d 969 (1992) (discussing second degree murder elements); People v. Prettyman, 14 Cal. 4th 248, 259, 58 Cal. Rptr. 2d 827, 926 P.2d 1013 (1996) (discussing aiding and abetting). In Petitioner's case, the trial court instructed the jury

---

[14](...continued)
stated out-of-court was true.]

(C.T. 173). The court presumes the jury followed these instructions. Weeks v. Angelone, 528 U.S. at 226.

1  on the elements of kidnapping and murder, including second degree
2  murder and first degree felony murder based on the underlying
3  kidnapping, and gave instructions on aiding and abetting and the
4  "natural and probable consequences" doctrine (C.T. 165-68, 179-89,
5  195-96).

7      The prosecution introduced evidence to show that Petitioner went
8  with Conner to find Reeves, and asked Reeves' uncle where they could
9  locate Reeves (R.T. 92-93, 97, 357-59).  Once the men found Reeves,
10  Conner ordered Reeves in the car at gunpoint (R.T. 100, 386).
11  Petitioner stayed in the car and rode with Conner and Reeves to the
12  location where the gun from the Indian Hills Market shooting had been
13  buried (R.T. 101-07, 719-22).  When Reeves was unable to locate the
14  gun, Petitioner told Conner, "He's the only witness.  You got to kill
15  him," referring to Reeves (R.T. 108, 112).  The men then drove Reeves
16  to another location where Petitioner got in a second car and led
17  Conner and Reeves on the 20-minute drive to the location where Reeves
18  was shot (R.T. 114, 117-21, 128).  When Reeves ran from the car and
19  from Conner at this location, Petitioner reportedly was laughing and
20  telling Conner he better catch Reeves (R.T. 131).  Then, after Conner
21  shot and choked Reeves, Petitioner asked Conner whether Reeves was
22  dead (R.T. 145).  One of the men confirmed Reeves was dead, they all
23  went to Conner's girlfriend's house where Petitioner and Conner
24  attempted to burn the clothes Conner and Thompson were wearing (R.T.
25  152-54).

27      This evidence was sufficient to establish, at a minimum, that
28  Petitioner aided and abetted the kidnapping and murder of Reeves.  The

30

1  Court notes that while Petitioner's mere presence alone would have
2  been insufficient to show he intended to aid Conner:

3

4          [P]resence at the scene of the crime, while insufficient of
5          itself to make one an aider and abettor, is one factor which
6          tends to show intent.  Other factors which may be considered
7          include the defendant's failure to take steps to prevent the
8          commission of the crime, companionship, and conduct before
9          and after the crime.

10

11  People v. Pitts, 223 Cal. App. 3d 606, 893, 273 Cal. Rptr. 757, 922
12  (1990) (citation omitted).  Each of these factors suggests Petitioner
13  shared Conner's intent.  As noted above, Petitioner did nothing to try
14  to prevent the crime or confront Conner about what was happening.
15  Instead, Petitioner went along with Conner, helping to find and detain
16  Reeves, leading Conner to the field where Reeves was shot, encouraging
17  Conner to kill Reeves, and then accompanying Conner back to Reed's
18  house where Petitioner and Conner attempted to destroy evidence.

19

20  III. **Petitioner's Counsel Was Not Ineffective.**

21

22          Petitioner contends that he was denied the effective assistance
23  of trial counsel when his counsel: (1) failed to oppose, in writing,
24  the consolidation of Petitioner's case with Conner's case, and failed
25  to request, in writing, a severance once charges related to the Indian
26  Hills Market shooting were added; and (2) failed to request
27  Petitioner's release on bail pending trial (Petition, p. 6C; Reply,
28  pp. 7, 11-14).  Petitioner speculates that his release on bail may

31

1  have led to separate trials (Petition, p. 6C).

2

3      The state habeas courts denied this claim without comment

4  (Respondent's Lodgments 11-16), so this Court must conduct an

5  independent review to determine whether the decision was contrary to,

6  or involved an unreasonable application of, "clearly established"

7  Supreme Court precedent.  See Delgado v. Lewis, 223 F.3d at 982.  For

8  the reasons discussed below, such a review requires the denial of

9  habeas relief.

10

11     **A.   Governing Legal Standards**

12

13     To establish ineffective assistance of counsel, Petitioner must

14  prove: (1) counsel's representation fell below an objective standard

15  of reasonableness; and (2) there is a reasonable probability that, but

16  for counsel's errors, the result of the proceeding would have been

17  different.  Strickland v. Washington, 466 U.S. 668, 688, 694, 697

18  (1984) ("Strickland").  A reasonable probability of a different result

19  "is a probability sufficient to undermine confidence in the outcome."

20  Id. at 694.  The court may reject the claim upon finding either that

21  counsel's performance was reasonable or the claimed error was not

22  prejudicial.  Id. at 697; Rios v. Rocha, 299 F.3d 796, 805 (9th Cir.

23  2002) ("Failure to satisfy either prong of the Strickland test

24  obviates the need to consider the other.") (citation omitted).  For

25  purposes of habeas review under 28 U.S.C. section 2254(d), Strickland

26  sets forth clearly established Federal law as determined by the United

27  States Supreme Court.  See Williams v. Taylor, 529 U.S. at 391

28  (citation and quotations omitted).

32

1    Review of counsel's performance is "highly deferential" and there
2  is a "strong presumption" that counsel rendered adequate assistance
3  and exercised reasonable professional judgment.  <u>Williams v. Woodford</u>,
4  384 F.3d 567, 610 (9th Cir. 2004), <u>cert. denied</u>, 546 U.S. 934 (2005)
5  (quoting <u>Strickland</u>, 466 U.S. at 689).   The court must judge the
6  reasonableness of counsel's conduct "on the facts of the particular
7  case, viewed as of the time of counsel's conduct."  <u>Strickland</u>, 466
8  U.S. at 690.   The court may "neither second-guess counsel's decisions,
9  nor apply the fabled twenty-twenty vision of hindsight."  <u>Karis v.</u>
10 <u>Calderon</u>, 283 F.3d 1117, 1130 (9th Cir. 2002), <u>cert. denied</u>, 539 U.S.
11 958 (2003) (citation and quotations omitted); <u>see Yarborough v.</u>
12 <u>Gentry</u>, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees
13 reasonable competence, not perfect advocacy judged with the benefit of
14 hindsight.") (citations omitted).   The test is "only whether some
15 reasonable lawyer . . . could have acted, in the circumstances, as
16 defense counsel acted."  <u>Coleman v. Calderon</u>, 150 F.3d 1105, 1113 (9th
17 Cir.) (citations and quotations omitted), <u>rev'd on other grounds</u>, 525
18 U.S. 141 (1998); <u>see also Babbitt v. Calderon</u>, 151 F.3d 1170, 1173-74
19 (9th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1159 (1999) (relevant inquiry
20 under <u>Strickland</u> is not what defense counsel could have pursued, but
21 rather whether the choices made by defense counsel were reasonable)
22 (citation and quotations omitted); <u>Morris v. California</u>, 966 F.2d 448,
23 456-57 (9th Cir.), <u>cert. denied</u>, 506 U.S. 831 (1992) (if the court can
24 conceive of a reasonable tactical reason for counsel's action or
25 inaction, the court need not determine the actual explanation).
26 Petitioner bears the burden to "overcome the presumption that, under
27 the circumstances, the challenged action might be considered sound
28 trial strategy."  <u>Strickland</u>, 466 U.S. at 689 (citation and quotations

33

1  omitted).

2

3      **B.    Discussion**

4

5      As discussed in Section I.A. above, and as Petitioner
6  acknowledges, Petitioner's counsel orally objected to consolidation of
7  his case with Conner's case, and joined in a request for severance
8  once the Indian Hills Market charges were added.   Nevertheless,
9  Petitioner asserts that counsel was ineffective for failing to file
10 written points and authorities (Reply, p. 14).   Petitioner does not
11 explain why counsel assertedly would have been any more successful in
12 opposing consolidation or in obtaining a severance had counsel filed
13 points and authorities.   See Respondent's Lodgment 15, p. 13; compare
14 James v. Borg, 24 F.3d at 26 (finding Strickland claim insufficient
15 were petition failed to identify what evidence counsel should have
16 presented that would have aided petitioner).   The Court's examination
17 of the record concludes that it would not have been unreasonable for
18 counsel to conclude that the filing of written points and authorities
19 would have been an idle act.

20

21     Assuming, arguendo, it was unreasonable for counsel not to oppose
22 consolidation in writing or not to request severance in writing,
23 Petitioner is not entitled to relief because he has not demonstrated
24 any reasonable probability that doing so would have altered the result
25 of trial.   See Strickland, 466 U.S. at 697.   As discussed in Section I
26 above, any error in the trial court's refusal to sever Petitioner's
27 trial was harmless due to the cross-admissibility of evidence and the
28 trial court's limiting instructions.

                                   34

1    Petitioner's claim that counsel was ineffective for not
2    requesting bail also fails.  Petitioner has not shown a reasonable
3    probability that his pretrial release on bail would have altered the
4    result of trial.  Cf. Gerstein v. Pugh, 420 U.S. 103, 119 (1975) (even
5    an illegal detention does not void a subsequent conviction); Percival
6    v. Marshall, 1996 WL 107279 (N.D. Cal. March 7, 1996), aff'd, 106 F.3d
7    408 (9th Cir. 1997) ("Not being free on bail pending trial does not
8    affect final disposition.") (citing People v. Norman, 252 Cal. App. 2d
9    381, 394, 60 Cal. Rptr. 609 (1967), cert. denied, 391 U.S. 923 (1968),
10   overruled on other grounds by McDermott v. Superior Court, 6 Cal. 3d
11   693, 696-97, 100 Cal. Rptr. 297, 493 P.2d 1161 (1972)); Sheridan v.
12   Conway, 2006 WL 1382203 (D. Idaho May 17, 2006) (same).  Petitioner's
13   speculation that his release on bail might have led to separate trials
14   does not undermine this Court's confidence in the outcome at trial.
15   James v. Borg, 24 F.3d at 26; Jones v. Gomez, 66 F.3d at 204.
16   Separate trials would not have altered the ultimate result.

17

18   For the foregoing reasons, the state courts' rejection of
19   Petitioner's claim of ineffective assistance of counsel was not
20   contrary to, or an objectively unreasonable application of, any
21   clearly established Federal law as determined by the United States
22   Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled
23   to habeas relief on this claim.

24

25   IV.   **The Trial Court's Sentencing of Petitioner to Consecutive Terms**
26         **Does Not Merit Habeas Relief.**

27

28   The sentencing court imposed the mandatory term of 15 years to

35

1  life for Petitioner's second degree murder conviction, plus one year
2  based on the jury's finding that a principal was armed, and a
3  consecutive term of eight years for Petitioner's kidnapping conviction
4  (R.T. 1112-14; C.T. 287-88).  Petitioner asserts the trial court erred
5  in sentencing Petitioner to consecutive sentences for both kidnaping
6  and second degree murder in alleged violation of California Penal Code
7  section 654 (Reply, p. 6; Respondent's Lodgment 7, p. 17).

8

9      California Penal Code section 654(a) provides, in pertinent part:
10  "An act or omission that is punishable in different ways by different
11  provisions of law shall be punished under the provision that provides
12  for the longest potential term of punishment, but in no case shall the
13  act or omission be punished under more than one provision."  Section
14  654 forbids the imposition of multiple punishments for offenses
15  committed during a single course of conduct and incident to a single
16  objective.  See People v. Perez, 23 Cal. 3d 545, 551, 153 Cal. Rptr.
17  40, 43, 591 P.2d 63 (1979); Cal. Penal Code § 654.[15]  However, "if the
18  evidence discloses that a defendant entertained multiple criminal
19  objectives which were independent of and not merely incidental to each

20  _____

21      [15]    Under California law, a defendant may be convicted of
    multiple crimes arising out of an indivisible course of conduct,
22  but may not be sentenced separately for each such offense.  See
    People v. Pearson, 42 Cal. 3d 351, 359-60, 228 Cal. Rptr. 509,
23  514-15, 721 P.2d 595 (1986); People v. Austin, 23 Cal. App. 4th
    1596, 1614, 28 Cal. Rptr. 2d 885, 896 (1994) (where Penal Code
24  section 654 prevents punishment for multiple offenses arising out
    of an indivisible course of conduct, proper judgment is to
25  "impose sentence on the greater crime and stay the sentence on
    the lesser, such stay to become permanent when service of
26  sentence for the greater offense is completed"), disapproved on
    other grounds, People v. Palmer, 24 Cal. 4th 856, 861, 867, 103
27  Cal. Rptr. 2d 13, 16, 20, 15 P.3d 234 (2001), cert. denied, 532
28  U.S. 1055 (2001).

other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." People v. Perez, 23 Cal. 3d at 551, 153 Cal. Rptr. at 43-44 (citation omitted). Petitioner asserts that the jury found, at most, that Petitioner harbored only one objective and intent, and therefore he should have been punished for only the second-degree murder conviction (Reply, p. 6; Respondent's Lodgment 7, p. 17).

**A.   Background**

At sentencing, the prosecution argued that Petitioner should be subject to consecutive sentences because there were two independent kidnappings (R.T. 1104-05). The prosecution explained:

> [W]hat we have is the initial kidnapping of the victim and taking him to the hole to see if they could find the gun. So there is one kidnapping. The gun's not found, there is a second kidnapping to Moreno Valley. ¶ And, again, it's this time period that Mr. Jenkins said, "hey, you got to kill this guy. He is your witness." ¶ And I believe the jury can find, since at that point Mr. Jenkins got in a different car and went out to the scene, that may be the basis of their second-degree murder conviction. . . . But what we have is we have the kidnapping to the hole, and then the intent changes once the gun's not found that now they are going to murder.

///

37

1  (R.T. 1108-09).  Petitioner's counsel opposed consecutive sentencing,
2  arguing that Reeves initially got into the car without being forced
3  according to the testimony of Reeves' cousin who said there was no
4  force used (R.T. 1110).  Counsel acknowledged that the argument
5  "depends on one interpretation of the facts that may or may not have
6  been accepted by the jury" (R.T. 1110).

7

8        In determining that section 654 did not apply to Petitioner's
9  convictions, the trial court found that there was a separate intent
10  and objective in the kidnapping that began when Reeves was first
11  picked up (R.T. 1112).  The court explained:

12

13        And [Conner, Thompson and Petitioner] did take [Reeves] to
14        the place to dig up the weapon.  That seemed to have been a
15        test.  If the weapon had been found, then he lives.  If the
16        weapon is gone, he is a snitch and he dies.  They stopped
17        short by what appears to have been six to eight inches of
18        finding that gun.  But they didn't find it.  ¶  And then
19        they took him, with the change of cars, to the dump area, or
20        the area where the county dump is located, and the murder
21        occurred.

22

23  (R.T. 1112).  The trial court then announced Petitioner's sentence
24  (R.T. 1112-14).

25

26        Petitioner challenged his sentence in his direct appeal to the
27  California Court of Appeal (Respondent's Lodgment 13).  The Court of
28  Appeal denied Petitioner's claim in a reasoned opinion (the last

38

1 | reasoned opinion on the issue) (Respondent's Lodgment 6).  While
2 | recognizing that a defendant may be punished for only one offense
3 | where all offenses are incident to one objective, the Court of Appeal
4 | found that the record was "unclear" whether the jury convicted
5 | Petitioner of second degree murder based on a finding of one objective
6 | (Respondent's Lodgment 6, pp. 26-27).  Because the Court of Appeal
7 | found that substantial evidence supported the jury's implicit finding
8 | that Petitioner had multiple or simultaneous objectives, the court
9 | denied relief (Respondent's Lodgment 6, pp. 27-28).  The court
10 | explained:

> [T]he evidence showed that Jenkins not only aided and
> abetted the kidnapping of [Reeves], but he also encouraged
> Conner to murder [Reeves].  When [Reeves] failed to produce
> the gun, Jenkins told Conner that [Reeves] had to be killed.
> When Conner and [Reeves] got back into Thompson's car,
> Jenkins said, '[H]e's the only witness.  You got to kill
> him.'  Because there is evidence to support the trial
> court's finding of multiple objectives, we must uphold the
> trial court's decision.

(Respondent's Lodgment 6, pp. 27-28).

**B.   Discussion**

     As the Court has previously noted, Federal habeas corpus relief
may be granted "only on the ground that [Petitioner] is in custody in
violation of the Constitution or laws or treaties of the United

States."   28 U.S.C. § 2254(a).   Mere errors in the application of
state law are not cognizable on habeas corpus.   Estelle v. McGuire,
502 U.S. at 67-68.   Matters relating to sentencing and serving of a
sentence generally are governed by state law and do not raise a
federal constitutional question.   See Cacoperdo v. Demosthenes, 37
F.3d 504, 507-08 (9th Cir. 1994), cert. denied, 514 U.S. 1026 (1995)
("decision whether to impose sentences concurrently or consecutively
is a matter of state criminal procedure and is not within the purview
of federal habeas corpus"); Hendricks v. Zenon, 993 F.2d 664, 674 (9th
Cir. 1993) (alleged error in consecutive sentences not a federal
question); Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989)
(question of whether particular prior conviction qualifies for
sentence enhancement under California law is not cognizable on federal
habeas corpus); Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989)
(rejecting as not cognizable petitioner's contention the California
court violated section 654 by imposing two consecutive terms for rape
in concert based on petitioner's single act of standing guard while
others raped the victim); see also Middleton v. Cupp, 768 F.2d 1083,
1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986) (federal
habeas relief "unavailable for alleged error in the interpretation or
application of state law"); Sturm v. California Adult Authority, 395
F.2d 446, 448 (9th Cir. 1967), cert. denied, 395 U.S. 947 (1969) ("a
state court's interpretation of its [sentencing] statute does not
raise a federal question").   "[S]tate courts are the ultimate
expositors of state law."   Mullaney v. Wilbur, 421 U.S. 684, 691
(1975); see also Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th
Cir.), cert. denied, 493 U.S. 942 (1989).
///

40

1     Under narrow circumstances, however, the misapplication of state

2 sentencing law may violate due process.  See Richmond v. Lewis, 506

3 U.S. 40, 50 (1992).  "[T]he federal, constitutional question is

4 whether [the error] is so arbitrary or capricious as to constitute an

5 independent due process" violation.  Id. (internal quotation and

6 citation omitted); see also Christian v. Rhode, 41 F.3d 461, 469 (9th

7 Cir. 1994) ("Absent a showing of fundamental unfairness, a state

8 court's misapplication of its own sentencing laws does not justify

9 federal habeas relief.").

10

11     Assuming, arguendo, the trial court erred in consecutively

12 sentencing Petitioner under California law because the jury's findings

13 concerning Petitioner's objective(s) were "unclear,"[16] Petitioner

14 still would not be entitled to relief.  Petitioner has not shown, and

15 the record does not reflect, that the state courts' decisions were

16 arbitrary or capricious.  To the contrary, as the Court of Appeal

17 explained, there was substantial evidence suggesting that Petitioner

18 harbored multiple objectives in helping Conner take Reeves to the hole

19 to look for the gun used in the Indian Hills Market shooting, and,

20 when the gun was not found, in leading Conner and Reeves to the

21 secluded location where Reeves was killed.

22 ///

23 ///

24

---

25     [16]  "Where, as here, a defendant's conduct. . . was
ambiguous, the trial judge was required to draw an inference as

26 to whether the two crimes were incident to a single objective."
People v. Roth, 228 Cal. App. 2d 522, 534, 39 Cal. Rptr. 582, 589

27 (1964).  In Roth, the Court of Appeal upheld the trial judge's
"reasonable" inference that Roth harbored multiple objectives

28 based on the evidence adduced at trial.

1    For the foregoing reasons, the Court of Appeal's rejection of
2    Petitioner's sentencing claim was not contrary to, or an objectively
3    unreasonable application of, any clearly established Federal law as
4    determined by the United States Supreme Court.  See 28 U.S.C. §
5    2254(d).  Petitioner is not entitled to habeas relief on this claim.

6

7    V.   **Petitioner Is Not Entitled to Habeas Relief in Connection with**
8         **His Claim that the State Courts Failed Adequately to Consider**
9         **Petitioner's Claims on Appeal and on Habeas Review.**

10

11    Finally, Petitioner asserts that the state courts reviewing his
12   claims on direct appeal and in Petitioner's state habeas proceedings
13   failed to consider all the facts and records assertedly supporting
14   Petitioner's claims.  Petitioner asserts that, had the state courts
15   considered the entire record, the courts would have discovered the
16   various violations alleged above (Pet., pp. 6-6A).  Petitioner points
17   in particular to the Supreme Court's summary denial of his state
18   habeas petition, citing In re Dixon, 41 Cal. 2d 756.[17]

19

20    Petitioner is not entitled to habeas relief on this claim.
21   Allegations of error in the state collateral review process are not
22   cognizable in federal habeas corpus proceedings.  Ortiz v. Stewart,
23   149 F.3d 923, 939 (9th Cir. 1998), cert. denied, 526 U.S. 1123 (1999)
24   ("[T]his court has specifically stated that federal habeas relief is

25   _____

26        [17]   The California Supreme Court's citation to In re Dixon
     indicates a denial based on the ground that the petition contains
27   claims that should have been, but were not, raised on direct
     appeal.  See Fields v. Calderon, 125 F.3d 757, 760 (9th Cir.
28   1997), cert. denied, 523 U.S. 1132 (1998).

42

1   not available to redress alleged procedural errors in state post-

2   conviction proceedings."); <u>Franzen v. Brinkman</u>, 877 F.2d 26, 26 (9th

3   Cir.), <u>cert. denied</u>, 493 U.S. 1012 (1989) (holding that allegations of

4   error in state's post-conviction review are not addressable through

5   habeas corpus proceedings).

6

7                                      **RECOMMENDATION**

8

9      For the foregoing reasons, IT IS RECOMMENDED that the Court issue

10   an Order: (1) approving and adopting this Report and Recommendation;

11   and (2) directing that Judgment be entered denying and dismissing the

12   Petition with prejudice.

13

14         DATED:  January 15, 2009.

15

16                           _____/s/_____

17                              CHARLES F. EICK
                        UNITED STATES MAGISTRATE JUDGE

18

43

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.